IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.                                          Case No. 3:07cr90/LC/CJK
                                                      3:09cv342/LC/CJK

LEONARD ALLEN SCHENK,
        Defendant.

---

## REPORT AND RECOMMENDATION

This matter is before the court upon defendant's motion to vacate, set aside, or correct sentence (doc. 120), filed pursuant to 28 U.S.C. § 2255. The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636, and NORTHERN DISTRICT OF FLORIDA LOCAL RULE 72.2(B). Having conducted a careful review of the record and the arguments presented, the undersigned concludes that the motion should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

The defendant, Leonard Allen Schenk, was charged on August 21, 2007, by superseding indictment with conspiracy to defraud the United States of property exceeding $1,000.00 in value (count I), in violation of 18 U.S.C. §§ 641 and 371, nine counts of theft of government property (counts II, VI, VIII, IX, XII, XIV, XV, XVII, and XIX), in violation of 18 U.S.C. §§ 641 and 2, eight counts of exportation of stolen property (counts VII, X, XI, XIII, XVI, XVIII, XX, and XXI), in violation of 22 U.S.C. § 2778(b)(2) and (c), and 22 C.F.R. §§ 121.1, 123.1, 127.1(a), 127.1(c), and 127.3, solicitation to commit murder (count III), in violation of 18 U.S.C. § 373,

travel in interstate commerce in the commission of murder for hire (count IV), in violation of 18 U.S.C. § 1958, and attempt to kill a witness of the United States (count V), in violation of 18 U.S.C. § 1512(a)(1)(A).  (Doc. 21, pp. 6-7, 18-30).  The same superseding indictment also charged a coconspirator, the defendant's mother, Jerri C. Stringer ("Stringer"), with the same offenses, except that Stringer was not charged under either count III (solicitation to commit murder), count IV (travel in interstate commerce in the commission of murder for hire), or count V (attempt to kill a witness of the United States).  (Doc. 21, pp. 6-7, 18-30).

On September 18, 2007, defendant executed a written plea agreement, filed with the district court, whereby Schenk agreed to plead guilty to all twenty-one counts of the superseding indictment in exchange for the government's promise to forebear from bringing further criminal charges arising out of the same transactions or occurrences to which defendant was pleading.  (Doc. 43, pp. 2, 7).  Schenk agreed that he was pleading guilty "because he is in fact guilty" of the offenses charged, admitting that were the case to go to trial, "the government could present evidence to support [the] charges beyond a reasonable doubt."  (Doc. 43, p. 7).  Defendant acknowledged his understanding that "any prediction of the sentence which may be imposed is not a guarantee or binding promise."  (Doc. 43, p. 11).  To that end, the agreement also noted that "[b]ecause of the variety and complexity of issues which may arise at sentencing, the sentence is not subject to accurate prediction."  (Doc. 43, p. 11).  In concluding the plea agreement, defendant assured the court that "[t]here [were] no other agreements" between himself and the United States Attorney, and that he was entering the agreement "knowingly, voluntarily and upon advice of counsel."  (Doc. 43, p. 14).  The written plea agreement was signed by Schenk, his appointed

counsel, Assistant Federal Public Defender Robert A. Dennis ("Dennis"), and Assistant U.S. Attorney Stephen P. Preisser.[1]  (Doc. 43, p. 14).

On the same day, defendant appeared before Senior U.S. District Judge Lacey A. Collier for a plea colloquy.  (Doc. 84).  Schenk swore to tell the truth, affirming his understanding that a plea of guilty admits the truth of the offenses charged.  (Doc. 84, pp. 3-4, 7).  Defendant confirmed that he had read the superseding indictment, reviewed it thoroughly with his attorney, and understood the charges.  (Doc. 84, 10-11).  Schenk told the court that he had discussed with his attorney how the sentencing guidelines might apply, and swore to his understanding that counsel could not tell him or predict his actual sentence.  (Doc. 84, p. 20).  Further, defendant assured the court he understood that in the event the sentence imposed was greater than he had hoped for or expected, he would remain bound by the plea of guilty and would not be permitted to withdraw it.  (Doc. 84, p. 21).

Testifying under oath, defendant certified that he had reviewed the written plea agreement thoroughly and with the assistance of counsel, that he had no questions regarding its contents, and that the written agreement was inclusive of all the promises made to induce his guilty plea.  (Doc. 84, pp. 21-22).  In addition, Schenk attested that he had not been "threatened or coerced or pressured or intimidated in any way" to cause him to accede to the plea agreement.  (Doc. 84, p. 24).  Defendant swore that he was satisfied with the representation afforded by Mr. Dennis and that he had no complaint about his treatment by anyone at the offices of the Federal Public Defender.  Schenk declined the opportunity to modify or supplement any of the

---

[1] According to an affidavit submitted by Thomas S. Keith ("Keith"), an Assistant Federal Public Defender and the branch chief of the Pensacola office of the Federal Public Defender, Dennis became ill in January 2009, and passed away on September 3, 2009.  (Doc. 127, p. 32).

answers or testimony he had provided theretofore, and assured the court that he had no questions about anything discussed during the proceedings.  (Doc. 84, p. 25).

In light of the foregoing exchange, the court found that defendant was alert and intelligent, and appreciated the nature of the charges against him, as well as the consequences of entering a guilty plea.  (Doc. 84, p. 25).  The court also found that Schenk was aware of the advisory sentencing guidelines, how they operate, and how their application might affect his sentence.  (Doc. 84, p. 26).  Finding defendant's decision to plead guilty to be "freely, voluntarily and understandably made . . . with the advice and counsel of a competent attorney" with whose representation he was satisfied, the court accepted Schenk's plea of guilty to all twenty-one counts of the superseding indictment.  (Doc. 84, p. 26).

On December 6, 2007, Judge Collier presided over defendant's sentencing hearing.  (Doc. 85).  Apologizing for his actions, Schenk addressed the district court before his sentenced was imposed:

> I would like to apologize to . . . anybody that may have been offended by my actions . . . .  And . . . just to let you know that I made a mistake. And if you look back in my history, I'm not a violent person, never have been.  All I've ever tried to do is take care of my family.  I know I'm looking at time, and I just want to go down the road, get myself together so I can come back out and be productive and help my mother out and take care of her.  That's all I have ever wanted to do.  I got involved with some bad people in some bad things and made some mistakes.

(Doc. 85, p. 24).   The court sentenced defendant to a term of 235 months' imprisonment on counts III and V, 120 months on counts II, IV, and VI through XXI, and a 60-month term on counts III and V, the terms to run concurrently one with the other.  (Doc. 60, p. 3).

Schenk appealed his sentence to the U.S. Court of Appeals for the Eleventh Circuit ("Eleventh Circuit"), where he was represented by Robert A. Harper, Jr. ("Harper"). (Doc. 127, pp. 34-43). On March 6, 2008, Harper furnished to defendant copies of his plea and cooperation agreement, plea colloquy transcript, and sentencing hearing transcript. (Doc. 127, p. 34). Having independently examined the record in its entirety, Harper moved to withdraw as defendant's counsel and filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), concluding that "no meritorious argument was preserved for review." (Doc. 127, p. 35). Nonetheless, Harper asked the Eleventh Circuit to permit Schenk to file a *pro se* brief raising any issue he believed to be of merit. (Doc. 127, p. 35). On March 17, 2008, the Eleventh Circuit authorized defendant to file a response to appellate counsel's *Anders* brief, inviting defendant to raise all factual and legal grounds justifying reversal of his conviction and sentence. (Doc. 127, p. 43). Having received no response, the Eleventh Circuit issued a mandate on August 12, 2008, affirming defendant's sentence and concluding that its own independent review of the record revealed "no arguable issues of merit." (Doc. 105, p. 2).

## DEFENDANT'S CLAIMS

Pursuant to 28 U.S.C. § 2255, defendant timely filed the instant motion to vacate, set aside, or correct sentence (doc. 120), asserting four grounds on which he believes he is being held in violation of the Constitution, laws, or treaties of the United States. Schenk contends in ground one that the government pressured, intimidated, and coerced him to plead guilty by threatening to indict his "totally innocent" younger brother. (Doc. 120, p. 4). In grounds two through four, defendant submits that trial counsel rendered ineffective assistance by (1) "incorrectly"

informing him, *inter alia*, that he would receive no more than a ten-year sentence, thereby coercing his guilty plea, (2) failing to object when the sentencing court allegedly miscalculated his guideline range and failed to apply U.S. SENTENCING GUIDELINES MANUAL § 2X1.1(b)(3)(A), and (3) failing to object when the sentencing court allegedly miscalculated his criminal history points.  (Doc. 120, pp. 5, 7, 8).

<u>ANALYSIS</u>

As a preliminary matter, the court notes certain general rules applicable in § 2255 proceedings following direct appeals, as well as the distinction between review under § 2255 and direct appeal.  "Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding."  *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development."  *Id.*  "A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal."  *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001).  "Further, a § 2255 movant cannot argue as the causal basis for his failure to advance an argument on direct appeal that the argument only became known to the movant due to subsequent developments in the law."  *Castro v. United States*, 248 F. Supp. 2d 1170, 1174 (S.D. Fla. 2003) (*citing McCoy*, 266 F.3d at 1258).

Regarding the important difference between a § 2255 collateral challenge and direct review, "[i]t has long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."  *See United States v. Addonizio*, 442 U.S. 178, 184 (1979).  Relief sought pursuant to §

2255 should be granted only if the challenged sentence resulted from "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure."  *See Hill v. United States*, 368 U.S. 424, 428 (1962); *see also Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) ("Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'" (*quoting United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981))).[2]

*Coercion of Plea*

Defendant alleges in ground one that the government coerced him to plead guilty by threatening to indict his innocent younger brother for the same offenses with which he was charged.  (Doc. 120, pp. 4, 17-18).  Because defendant did not raise it on direct appellate review, this claim sounds in procedural default and is barred in the post-conviction forum.  *See United States v. Nyhuis*, 211 F.3d 1340, 1343-44 (11th Cir. 2000) (requiring defendant seeking to raise issue on motion for collateral relief to show "cause excusing his failure to raise the issue previously and actual prejudice resulting from the alleged error"); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) ("Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding."); *Greene v. United States*, 880 F.2d 1299, 1305 (11th

---

[2] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit Court of Appeals issued before October 1, 1981.

Cir. 1989) (requiring that "a defendant . . . assert an available challenge to a sentence on direct appeal or be barred from raising the challenge in a section 2255 proceeding"); *Castro v. United States*, 248 F. Supp. 2d 1170, 1174 (S.D. Fla. 2003) ("[A] § 2255 movant cannot argue as the causal basis for his failure to advance an argument on direct appeal that the argument only became known to the movant due to subsequent developments in the law." (*citing McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001))).

"Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004). "Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) [r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* (citations and quotation marks omitted). "Accordingly, a non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Id.* at 1232-33 (citation omitted). The "fundamental miscarriage of justice" exception is satisfied where "a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." *See Murray v. Carrier*, 477 U.S. 478, 496 (1986). "[I]n this regard . . . 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). In the alternative, a defendant who fails to raise a

claim on direct appeal can evade the procedural bar on a motion for collateral relief by showing "cause excusing his failure to raise the issue previously and actual prejudice resulting from the alleged error." *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

In the motion to vacate, defendant attempts to explain his failure to raise this claim of prosecutorial coercion before the Eleventh Circuit, asserting that appointed appellate counsel, Mr. Harper, declined to communicate with him by letter or by telephone, and thus refused to raise "any issues" on direct appeal. (Doc. 120, pp. 4, 10). First, defendant identifies no evidence to substantiate his claim that Harper neglected to discuss with him the matter of his appeal, or that appellate counsel declined to raise any claims on appeal as a result of a lapse in communication. Rather, the record shows that Harper moved to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), concluding that "no meritorious argument was preserved for review." (Doc. 127, p. 35). Notwithstanding this assessment, Harper asked that Schenk be permitted to approach the appellate court *pro se*, and the Eleventh Circuit authorized defendant to file a response to counsel's *Anders* brief, inviting defendant to raise all claimed factual and legal grounds justifying reversal of his conviction and sentence. (Doc. 127, pp. 35, 43). Despite this opportunity, defendant did not raise a single challenge to his conviction or sentence, which the Eleventh Circuit affirmed. (Doc. 105, p. 2). Defendant offers no explanation as to why he failed personally to raise this issue when prompted on direct appeal. Consequently, defendant fails to excuse the procedural default. *See Lynn v. United States*, 365 F.3d 1225, 1232-33 (11th Cir. 2004); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

Conversely, in his reply memorandum, defendant repackages and advances this claim under the guise of ineffective assistance of counsel, contending that counsel, in effect, coerced his guilty plea by misadvising him of the government's threat to indict his brother. (Doc. 131, pp. 2-3). Defendant concludes that the claim is not procedurally barred, reasoning that "claims of ineffective assistance of counsel must be raised by collateral attack as opposed to direct appeal . . . ." (Doc. 131, p. 4). Defendant, however, cannot raise an argument for the first time in a reply memorandum. *See Mamone v. United States*, 559 F.3d 1209, 1210 n.1 (11th Cir. 2009) ("Normally, we will not address an argument raised for the first time in a reply brief."). Accordingly, the court will not consider Schenk's contention that he did not raise ground one on direct appeal because it is actually a claim of ineffective assistance of counsel. For these reasons, defendant has not demonstrated cause for his failure to raise the claim asserted in ground one on direct appellate review, and the claim should be denied on procedural grounds.[3]

Procedural default notwithstanding, the merits of the foregoing claim still offer no basis for relief. The central allegation, that the government threatened to indict defendant's younger brother if Schenk refused to enter a guilty plea, is utterly conclusory and unsupported by credible record evidence. Defendant even concedes in presenting his argument in support of ground two that counsel "incorrectly" informed him that the government had made such a threat. (Doc. 120, p. 5). Internal

---

[3] Schenk, having acknowledged a factual basis for his guilty plea in the written plea and cooperation agreement, does not even allege actual innocence or otherwise advance factual assertions reasonably calculated to prove such a theory. Failing a showing of actual innocence, the "fundamental miscarriage of justice" exception offers no greater aid to defendant's attempt to excuse the procedural default of ground one. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

inconsistencies aside, the claim is also contradicted in all material respects by defendant's plea and cooperation agreement and plea colloquy, during which Schenk affirmed under oath that he had not been threatened, coerced, pressured, or intimidated in any manner, and that he was pleading guilty because he was, in fact, guilty of the offenses charged. (Docs. 84, p. 24; 43, p. 7). Having denied during his plea hearing that he was threatened in any way to plead guilty, defendant is estopped by his own affirmations from doing so on collateral review. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the colloquy are true."); *United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true."); *United States v. Stitzer*, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ("[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." (*citing United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975))); *Downs-Morgan v. United States*, 765 F.2d 1534, 1541 n.14 (11th Cir. 1985) (explaining that defendant's statement at the time of his Rule 11 hearing that his guilty plea is intelligent and voluntary "gives rise to a presumption that the plea is constitutionally adequate"); *Sanders v. McNeil*, No. 8:05–CV–1354–T–27TBM, 2008 WL 1909166, at *9 n.8 (M.D. Fla. April 30, 2008) (noting post-conviction presumption as to verity of "sworn statements made in open court," and determining that "presumption cannot be overcome by a bald assertion of misunderstanding, or

that those statements were not true" (*citing Medlock*, 12 F.3d at 187, *Harvey v. United States*, 850 F.2d 388, 396 (8th Cir. 1988))).

*Ineffective Assistance of Counsel*

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "First, the defendant must show that counsel's performance was deficient[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Second, the defendant must show that the deficient performance prejudiced the defense[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In applying *Strickland*, the court may dispose of an ineffective assistance of counsel claim if the defendant fails to carry his burden on either of the two prongs. *See* 466 U.S. at 697.

In ground two, defendant argues that counsel, Mr. Dennis, rendered ineffective assistance by informing him, inaccurately, that he would not receive a prison sentence exceeding ten years (but would face a life sentence if he proceeded to trial), that he would enjoy the benefit of a two-level "safety valve" reduction in his base offense level pursuant to 18 U.S.C. § 3553(f), that he would not be subject to a criminal fine, that Dennis would "vigorously oppose" any sentence enhancement, and, as noted above, that the government was threatening to indict his younger brother.[4]  (Docs.

---

[4] "Safety-valve relief allows for sentencing without regard to any statutory minimum, with respect to certain offenses, when specific requirements are met." *United States v. Brehm*, 442 F.3d 1291, 1299 (11th Cir. 2006) (*citing* 18 U.S.C. § 3553(f)).  The safety valve provision is activated when the court finds at sentencing that defendant, *inter alia*, does not have more than one criminal

120, p. 5; 131, p. 10).  Defendant submits that had counsel accurately and adequately explained the terms according to which he was pleading guilty, he would not have entered the plea and instead would have insisted upon proceeding to trial.  (Docs. 120, pp. 20-21; 131, p. 10).

As the government observes, the claims defendant advances in ground two are conclusory, refuted in all significant regards by the evidence of record, and dependent largely upon his own conjecture.[5]  In considering the preceding ground, the court noted the complete absence from the record of evidence tending to suggest that the government coerced defendant's guilty plea by threatening the indictment of his younger brother.  Likewise, the record does not permit the inference that defense counsel somehow relayed such a threat to defendant to induce him to plead guilty. Schenk also submits that counsel raised the possibility of a safety valve reduction in his base offense level, but such allegations fail to clear even the low bar of plausibility.  Defendant, who had four criminal history points and was pleading guilty to three murder-related offenses (solicitation to commit murder, travel in interstate commerce in the commission of murder for hire, and attempt to kill a witness of the

_____

history point, as determined under the sentencing guidelines, and did not "use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."  18 U.S.C. § 3553(f)(1) and (2).

[5] In addition to a personal (but unsworn) affidavit, Schenk supplemented the record with an unsworn affidavit from his mother, Ms. Stringer.  (Doc. 131, p. 11).  In the latter submission, comprised of merely three sentences, Stringer offers the summary conclusion that Dennis approached her after she was released on bond, instructing her to "let Leonard [Schenk] know that . . . the Government was going to arrest [her] minor son . . . if Leonard did not plead guilty."  (Doc. 131, p. 11).  No more than defendant's bald and self-serving assertions do Stringer's unsworn, apparently contrived recollections find either direct or inferential support in the record, and the undersigned accords them *de minimis* evidentiary weight as a result.

United States), did not qualify for application of the safety valve.  *See* 18 U.S.C. § 3553(f)(1) and (2) (providing for operation of the safety valve where sentencing court finds defendant, *inter alia*, has no more than one criminal history point and did not "use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense").  The record simply betrays no indication that Dennis expressed favorable prospects of defendant benefitting from this statute.  In the absence of affirmative evidence to the contrary, the presumption is that counsel rendered reasonable professional assistance and, by extension, that Dennis did not tell defendant he would enjoy the benefits of a statutory provision for which he was plainly ineligible.  *See Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) ("There is a strong presumption that counsel's conduct falls within the 'wide range of reasonable professional assistance.'" (*quoting Waters v. Thomas*, 46 F.3d 1506, 1511-12 (11th Cir. 1995) (en banc))); *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) ("Where . . . the evidence does not clearly explain what happened, or more accurately why something failed to happen, the party with the burden loses."); *Chandler v. United States*, 218 F.3d 1305, 1315 n.15 (11th Cir. 2000) (en banc) ("An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of effective representation]."); *Williams v. Head*, 185 F.3d 1223, 1227-28 (11th Cir. 1999) (noting that "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" particularly "where the record is incomplete or unclear about [counsel's] actions" (*quoting Strickland v. Washington*, 466 U.S. 668, 690 (1984))); *Yordan v. Dugger*, 909 F.2d 474, 477 (11th

Cir. 1990) ("[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance.").

In his affidavit submitted in connection with the government's response to the motion to vacate, Mr. Keith recalled his review of the Federal Public Defender's file pertaining to Dennis's representation of the defendant:

> I have read Mr. Schenk's § 2255 motion and have thoroughly reviewed our file in his case.  I did not see any notes, memorandums, documents, caselaw, etc., in the file that appeared to have any relevance to the issues raised in Mr. Schenk's § 2255 motion regarding Mr. Dennis' alleged ineffective assistance of counsel.  For example, I did not see any notes or memorandum regarding discussions between Mr. Dennis and Mr. Schenk regarding the guilty plea and plea and cooperation agreement, or any notes or caselaw regarding the sentencing issues Mr. Schenk claims that Mr. Dennis should have raised.

(Doc. 127, p. 32).  Keith's observations lend further support to the notion, alluded to above, that Dennis did not convey to defendant any alleged threat to prosecute his brother or any of the promises prejudging the length and nature of his sentence.

Owing to his passing, defense counsel cannot answer to the accusations leveled by defendant, which find no support in the record.  Nonetheless, the record speaks in clear terms to rebut the claims defendant raises in this ground.  In the written plea agreement, for instance, Schenk represented that he was pleading guilty because he was, in fact, guilty of the twenty-one offenses charged, and not, by implication, because his attorney had assured him of a favorable sentence.  (Doc. 43, p. 7).  Further, defendant confirmed his understanding that "any prediction of the sentence which may be imposed is not a guarantee or binding promise."  (Doc. 43, p. 11).  "Because of the variety and complexity of issues which may arise at sentencing," the agreement continued, "the sentence is not subject to accurate prediction."  (Doc. 43,

p. 11).  By his signature defendant assured the district court that "[t]here [were] no other agreements" between himself and the United States Attorney, and that he was entering the agreement "knowingly, voluntarily and upon advice of counsel."  (Doc. 43, p. 14).

The plea colloquy is similarly definitive as to defendant's beliefs and state of mind at the time he acquiesced to the written agreement and entered the guilty plea. Under oath, defendant stated that he had discussed with his attorney how the sentencing guidelines might apply in his case, but assured the court of his understanding that Dennis could not foretell his actual sentence.  (Doc. 84, p. 20). Confirming that the written agreement contained "all of the promises" inducing him to plead guilty, Schenk swore that he had not been "threatened or coerced or pressured or intimidated in any way" to cause him to enter the written plea agreement. (Doc. 84, pp. 22, 24).  Finally, defendant expressed satisfaction with his attorney, denying that he had "any complaint" with the representation afforded by Mr. Dennis. (Doc. 84, p. 25).

The allegations defendant raises in the instant motion—based on counsel's alleged communication of threats of malicious prosecution of family members and guarantees as to the length and nature of his sentence—are conspicuous only in their absence from the multiple judicial proceedings in which defendant was involved before, during, and after he pleaded guilty in this case.  Despite two opportunities to address the district court (during his plea and sentencing hearings), in addition to authorization from the Eleventh Circuit to raise all claimed grounds of reversible error in response to appellate counsel's *Anders* brief, defendant never broached any of the points advanced under this ground of ineffective assistance.  If defendant had

any concerns about the circumstances surrounding his plea or the representation of counsel, especially concerns of the magnitude considered here, it stands to reason that he would have raised them during one or more of the three occasions on which he had opportunity to address a federal tribunal.  That defendant did not do so all but compels the conclusion that Dennis did not make the representations or give the assurances Schenk now describes.  Having failed to identify in the record any credible evidence to support the allegations underlying this ground, or demonstrate by a preponderance of the evidence that he would have gone to trial but for the representations alleged, defendant cannot prevail on this ground of ineffective assistance of counsel.[6]  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (holding that two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel, and conditioning successful claim upon defendant's showing "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"); *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (reasoning that "[s]olemn declarations in open court carry a strong presumption of verity" in collateral proceedings, and holding that "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible");

---

[6] As noted in the introduction of this ground, defendant also alleges that counsel rendered ineffective assistance by informing him, inaccurately, that he would not be subject to a criminal fine, and that Dennis would "vigorously oppose" any sentence enhancement.  Defendant, however, does not offer any corroborating factual detail to support these charges, explain what prejudice he suffered as a result, or otherwise develop the substance of the allegations.  Accordingly, these claims are equally unavailing. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("'Conclusory allegations of ineffective assistance are insufficient.'" (*quoting United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991))).

*Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("'Conclusory allegations of ineffective assistance are insufficient.'" (*quoting United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991))).

Defendant contends in ground three that counsel rendered ineffective assistance by failing to object to the sentencing court's failure to apply U.S. SENTENCING GUIDELINES MANUAL § 2X1.1(b)(3)(A), or the omission from the presentence investigation report of the corresponding base offense level reduction when that provision is applied.[7] (Doc. 120, pp. 22-25). Schenk maintains that these omissions deprived him of a three-level reduction in his base offense level, and thereby increased the guideline range pursuant to which he was sentenced. (Doc. 120, pp. 24-25). Defendant reasons that § 2X1.1(b)(3)(A) is applicable to his case because the conspirators did not take "crucial steps" toward committing the substantive offenses charged in counts III (solicitation to commit murder), IV (travel in interstate commerce in the commission of murder for hire), and V (attempt to kill a witness of the United States). Rather, defendant asserts that he (unknowingly) propositioned an undercover agent to commit the foregoing offenses, and thus that the agent did not purchase or possess any of the physical items necessary to commit the murder. (Doc. 120, pp. 22-23).

Defendant's argument in support of this ground is misplaced. Where an individual solicited to commit a crime has not completed all the acts necessary to complete the substantive offense, § 2X1.1(b)(3)(A) provides for a three-level reduction in the defendant's base offense level:

---

[7] References to the presentence investigation report will be by "PSR" followed by the paragraph number.

> If a solicitation, decrease by **3** levels unless the person solicited to
> commit or aid the substantive offense completed all the acts he believed
> necessary for successful completion of the substantive offense or the
> circumstances demonstrate that the person was about to complete all
> such acts but for apprehension or interruption by some similar event
> beyond such person's control.

U.S. Sentencing Guidelines Manual § 2X1.1(b)(3)(A) (bold in original).
Nevertheless, § 2X1.1(b)(3)(A) does not apply "[w]hen an attempt, solicitation, or
conspiracy is expressly covered by another offense guideline section . . . ." *See id.*
§ 2X1.1(c)(1).  Here, the base offense level for the charge of conspiracy to defraud
the United States (count I) is governed by § 2M5.2 (relating to exportation of arms,
munitions, or military equipment or services without required validated export
license).  (PSR ¶ 88).  Pursuant to § 3D1.2(d), count I is properly grouped with the
charges for theft of government property (counts II, VI, VIII, IX, XII, XIV, XV,
XVII, and XIX), and exportation of stolen property (counts VII, X, XI, XIII, XVI,
XVIII, XX, and XXI), because the offense level is determined largely on the basis of
the total amount of harm or loss.  (PSR ¶ 88).

The charges of solicitation to commit murder (count III), travel in interstate
commerce in the commission of murder for hire (count IV), and attempt to kill a
witness of the United States (count V) are grouped together under § 3D1.2(b), as the
conduct involves the same victim and two or more transactions connected by a
common criminal objective or constituting part of a common scheme or plan.  (PSR
¶ 89).  These counts of conviction implicate §§ 2A1.5 (regarding conspiracy or
solicitation to commit murder), 2E1.4 (use of interstate commerce facilities in the
commission of murder for hire), and 2A2.1 (attempted murder).  (PSR ¶ 89).  The two
groups of offenses are then grouped together pursuant to § 3D1.2(c), as one of the

counts embodies conduct treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to one of the other counts.[8] (PSR ¶ 90).  Like all of the other charges, then, the solicitation offense to which defendant refers—solicitation to commit murder—is one "expressly covered by another offense guideline section . . . ." *See* U.S. SENTENCING GUIDELINES MANUAL § 2X1.1(c)(1). Accordingly, § 2X1.1(b)(3)(A) is not triggered in the determination of defendant's base offense level and corresponding guideline range, and any argument to the contrary would have been frivolous.  Because the Constitution does not require effective counsel to raise issues of dubious merit, *see Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (holding that "[c]ounsel was not ineffective for failing to raise these issues because they clearly lack merit"), *Meeks v. Moore*, 216 F.3d 951, 968 (11th Cir. 2000) (affirming district court's assertion that counsel has no duty to bring forth non-meritorious motions), *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) ("[C]ounsel need not pursue constitutional claims which he reasonably believes to be of questionable merit."), *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (applying *Strickland* and holding that "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"), *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (crediting as professionally reasonable counsel's decision not to file what he believed to be a meritless motion), *Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them."), defendant fails to show that Dennis

---

[8] According to the presentence investigation report, Schenk's attempt to kill the witness is a form of obstructive conduct to the underlying offenses.  (PSR ¶ 90).  In other words, defendant attempted to have the witness killed to lessen his sentence for the underlying fraud, theft, and exportation crimes.  (PSR ¶ 90).

rendered deficient performance in declining to argue before the sentencing court for a reduction in base offense level pursuant to § 2X1.1(b)(3)(A), or object to the presentence investigation report on the basis of the omission of such a reduction.

In ground four, defendant asserts that counsel rendered ineffective assistance by failing to object at the sentencing hearing to the allegedly improper assessment of criminal history points. (Doc. 120, pp. 26-30). In the presentence investigation report, Schenk was assessed a total of four criminal history points (PSR ¶ 107), including one point each from pleas of nolo contendere, entered in Florida state court, to the offenses of driving under the influence ("DUI") and discharging a firearm in public. (PSR ¶¶ 103-04). Defendant was not represented by an attorney when he entered the latter plea. (PSR ¶ 104). No term of incarceration was imposed for either conviction, but Schenk was sentenced to one year's probation on the DUI conviction, his first, and six months' probation for the firearm offense. (PSR ¶¶ 103-04).

In computing criminal history points, sentences for all felony offenses are counted.[9] *See* U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(c). Sentences for misdemeanor and petty offenses are also counted, except as provided in § 4A1.2(c)(1) and (2). Defendant asserts first that the DUI sentence should not have been utilized to assign criminal history points, theorizing that (1) he was not sentenced to a term of probation in excess of one year, and (2) he did not serve a term of imprisonment. (Doc. 120, p. 27). Similarly, Schenk contends that the sentence imposed in connection with the firearm offense should not have been counted in assessing

---

[9] A "felony offense" is defined as "any federal, state, or local offense punishable by death or a term of imprisonment exceeding one year, regardless of the actual sentence imposed." U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(o).

criminal history points, because (1) the corresponding plea was uncounseled, and (2) he was not sentenced to a term of probation exceeding one year or any term of incarceration.  (Doc. 120, pp. 27-28).

The defendant recites an accurate factual history, but his preferred application of the sentencing guidelines misses the mark.  Under certain conditions, a sentence for a misdemeanor or petty offense enumerated in U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(c)(1) is not counted for the purpose of computing criminal history points; on the other hand, a sentence imposed for an offense enumerated in § 4A1.2(c)(2) is never counted.  Both driving under the influence (when a first offense), and discharging a firearm in public are offenses punishable by no more than six months' and one year's imprisonment, respectively, *see* §§ 316.193(1) and (2)(a)2.a., 775.082(4)(a), 790.15(1), Florida Statutes (2012).  Both are, thus, misdemeanor offenses as understood by the sentencing guidelines.  Neither, however, is an offense excluded by U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(c), such that the corresponding sentence would not be counted in computing criminal history points.  That the sentence imposed for a criminal history offense is not one of incarceration, or probation in excess of one year, is immaterial—the relevant provision directs only that such a "sentence" (where not expressly excluded) be counted, irrespective of its nature or length.  *See* U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(c) ("Sentences for misdemeanor and petty offenses are counted, except as follows . . . .").

Relying on *Scott v. Illinois*, 440 U.S. 367 (1979), Schenk also characterizes as "invalid" the uncounseled plea to the offense of discharging a firearm in public, arguing that it should have been discounted accordingly in computing his criminal history points.  (Doc. 120, pp. 26-27).  In *Scott*, the Court held that the Sixth and

Fourteenth Amendments to the Constitution "require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." *See id.* at 373-74.  The right to assistance of appointed counsel was not implicated by defendant's plea to the firearm conviction, because the state court did not sentence him to a term of imprisonment.  *See id.* at 369 (declining to extend right to appointed counsel to "the case where a defendant is charged with a statutory offense for which imprisonment upon conviction is authorized but not actually imposed"); (PSR ¶ 104).   By defendant's own admission, moreover, the Florida court in which he entered the plea found him financially able to retain an attorney (doc. 120, p. 27), meaning defendant would not have been constitutionally entitled to court-appointed counsel even if he were sentenced to a term of incarceration.[10]  *See Scott*, 440 U.S. at 373-74 (reserving right to court-appointed counsel only to *indigent* criminal defendants sentenced to a term of imprisonment).

In no uncertain terms, the Supreme Court has determined that "an uncounseled [misdemeanor] conviction valid under *Scott* may be relied upon to enhance the sentence for a subsequent offense, even though that sentence entails imprisonment." *See Nichols v. United States*, 511 U.S. 738, 746-47 (1994).  As detailed above, defendant's uncounseled plea to the misdemeanor firearm offense did not violate the bounds of *Scott*, which conditions the right to appointed counsel on both a showing of indigency and imposition of a prison sentence.  Because Schenk satisfied neither condition, the uncounseled conviction was valid under *Scott* and, by extension,

---

[10] Schenk concedes he entered a "waiver" and proceeded without counsel in that case.  (Doc. 120, p. 27).

properly relied upon by the district judge in assessing criminal history points.  In other words, any objection on such basis as defendant urges counsel should have pursued here would have been futile and, as a matter of effective assistance of counsel, unnecessary.  *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (holding that "[c]ounsel was not ineffective for failing to raise these issues because they clearly lack merit"); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) ("[C]ounsel need not pursue constitutional claims which he reasonably believes to be of questionable merit."); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (applying *Strickland* and holding that "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"); *Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").  Having failed to demonstrate that his attorney's representation "fell below an objective standard of reasonableness," *see Strickland v. Washington*, 466 U.S. 668, 688 (1984), defendant cannot prevail on this claim of ineffective assistance of counsel.

Although he does not set it off as an independent ground for relief, defendant suggests an additional claim of ineffective assistance in the motion to vacate. Following the presentation of Schenk's asserted grounds, the § 2255 motion form asks the movant to identify "which ground or grounds have not been [previously] presented [in some federal court], and state [the] reasons for not presenting them . . . ." (Doc. 120, p. 10).  In response to this inquiry, defendant, in a rather offhand manner, hypothesized a claim of ineffective assistance of *appellate* counsel:

> Grounds 1, 2, 3, and 4 were not presented previously.  All of these grounds were not presented in the appeal, due to the fact that the [appointed] attorney . . . would not respond or cooperate with me in

> resolving my [appellate] issues.  Instead he [chose] to file an Anders
> brief and insist there [were] no grounds for an appeal, when in all
> actuality, he provided another form of inaffective [sic] assistance of
> counsel.

(Doc. 120, p. 10).  Defendant, however, did not expand upon or otherwise address this claim in the memorandum accompanying the motion to vacate.  On account of its wholly conclusory nature and the want of any credible evidence of record to support it, this ground of ineffective assistance, considered only for the sake of completeness, must fail as well.[11]  *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("'Conclusory allegations of ineffective assistance are insufficient.'" (*quoting United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991))).

Even if defendant had developed this ground in further factual and legal detail, relief would not be forthcoming.  An appellate advocate does not render deficient performance merely by declining to raise claims of ineffective assistance of trial counsel, which, as a general rule, are not cognizable on direct appeal, but rather are "properly raised by collateral attack in the district court."  *See United States v. Arango*, 853 F.2d 818, 823 (11th Cir. 1988).  Schenk's attorney on appeal did not perform deficiently by failing to assert before the Eleventh Circuit the claims raised in grounds two through four, each of which defendant premises on an allegation of ineffective assistance of trial counsel.  Though Mr. Harper, in theory, could have

---

[11] As noted in the analysis of ground one, in fact the record refutes defendant's contention that appellate counsel, Mr. Harper, lapsed in his obligation to communicate with his client.  Harper addressed Schenk by letter dated March 11, 2008, asserting his conclusion that "no meritorious argument was preserved for review," and explaining that he could not "ethically present frivolous arguments to the [appellate] court." (Doc. 127, p. 35).  In response to defendant's January 2009 inquiry, Harper wrote to Schenk again on March 6 of that year, enclosing his change of plea transcript, sentencing transcript, and plea and cooperation agreement.  (Doc. 127, p. 34).

raised the claim advanced under ground one, wherein Schenk contends the government pressured, intimidated, and coerced him to plead guilty by threatening to indict his innocent younger brother, the record contains no trace of evidence to support this contention, despite ample opportunity afforded defendant at the plea colloquy to raise the issue.  No more than trial counsel must an appellate attorney present contentions unanchored in law or fact.  *See Owen v. Sec'y, Fla. Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009) (holding "any deficiencies of [appellate] counsel in failing to raise or adequately pursue [substantive issues lacking merit] cannot constitute ineffective assistance"); *Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1311 (11th Cir. 2008) (agreeing that "appellate counsel is not ineffective for failing to raise a meritless issue on appeal").  As the appellate tribunal recognized, the record as developed at the district court level reveals "no arguable issues of merit," and Harper's "assessment of the relative merit of the appeal [was] correct." (Doc. 105, p. 3).  That defendant did not avail himself of the invitation to respond to Harper's *Anders* brief is probative of the latter's determination that "no meritorious argument was preserved for review."  (Doc. 127, p. 35).  For these reasons, the claim of ineffective assistance of appellate counsel offers no basis for relief.

Pursuant to 28 U.S.C. § 2255(b), this court must conduct an evidentiary hearing upon defendant's motion to vacate sentence, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  In support of such motion, however, defendant must proffer credible and specific evidence entitling him to relief.  *See Drew v. Dep't of Corr.*, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual

proffer or evidentiary support”); *Hill v. Moore*, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."). Here, defendant's claims are procedurally defaulted, without merit, or otherwise refuted by the record. This court may therefore deny the requested relief without an evidentiary hearing. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is *not* entitled to an evidentiary hearing . . . when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible.") (quotation marks omitted); *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983) ("An evidentiary hearing is not required where, as here, the district court can determine the merits of the ineffectiveness claim based on the existing record.").

Accordingly, it is respectfully RECOMMENDED:

That the motion to vacate, set aside, or correct sentence (doc. 120) pursuant to 28 U.S.C. § 2255 be DENIED.

At Pensacola, Florida, this 14th day of August, 2012.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).